AT ROANOKE, VA
FILED

MAR 0 6 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| DONELL J. BLOUNT, SR., | CASE NO. 7:11CV00594 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| VICKI PHIPPS, ET AL., | By: Glen E. Conrad |
| | Chief United States District Judge |
| Defendants. | |

Donell J. Blount, Sr., a Virginia inmate proceeding pro se, filed this action as a civil rights complaint under 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Blount alleges that the defendant prison officials have interfered with his right to free exercise of his religious beliefs, in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, et seq.[1] After review of the parties' submissions, the court concludes that the defendants' motion for summary judgment must be granted.

## I

Blount asserts two separate claims for relief: (1) Officers Owens and Counts delayed returning two religious books confiscated from Blount in June 2010; and (2) Defendants Phipps and Rowlette forced Blount to violate his religious fast during Ramadan 2010 by refusing to alter the pill pass schedule. Blount asserts that both of these incidents violated his sincerely held

---

[1] The defendants, all employees at Red Onion State Prison, are: Correctional Officers J. Owens and K. Counts; Vicki Phipps, R.N., Director of Nursing; and Richard Rowlette, Assistant Warden of Operations ("AWO").

Muslim beliefs and seeks monetary damages.[2] Defendants filed a motion for summary judgment, to which Blount responded, making the matter ripe for disposition. Blount alleges the following facts relevant to his claims.

**Claim 1: Religious Books**

Blount is a Muslim and claims to have a sincere, religious belief that he should read and study the Holy Bible and Holy Qur'an daily. Blount has owned copies of these two books for years and has used them for his religious reading and study. On June 6, 2010, prison officials confiscated ten books from Blount's cell, including a Bible, a Qur'an, and another Islamic book by Imam Ali, because they exceeded the number of books Blount was allowed to possess. On June 16, 2010, when Property Officer J. Owens gave Blount a confiscation form listing his religious books, Blount informed Owens that he needed his Bible and Qur'an for his daily religious study. Owens assured Blount that the religious books could be returned to him the following week in exchange for other books and noted this fact on the form.

When Blount had not received the Qur'an and Bible by July 4, 2010, he filed an informal complaint, stating that property officers had not yet included his religious volumes among the books offered for exchange. In his July 12, 2010 reply, Owens advised Blount that these books would be included for the next exchange. Blount filed a regular grievance on July 14, 2010, complaining that he still had not received the books and demanding compensation for being deprived of the books for several weeks. Officers Deel and Owens told Blount on July 21, 2010, and Officer Counts later verified, that under Virginia Department of Corrections ("VDOC") operating procedures, which are available online as public record, the books would not be

---

[2] The court notes that Blount makes no claim for prospective relief. Moreover, he has no such claim. He had regained possession of his religious books before he filed this lawsuit, and VDOC policy was amended, effective July 2012, to require that inmates participating in the Ramadan fast be provided the opportunity to take their medications outside fasting hours. See Operating Procedure ("OP") 841.3(IV)(C)(4)(e).

2

returned to Blount until he withdrew his grievance. The policy defendants referenced provides that property officers must retain any confiscated property until any pending grievance about the propriety of the confiscation itself has been resolved.[3] After investigation, the warden found that Blount's grievance did not concern the initial confiscation of his books and that the pendency of the grievance should not have delayed return of the books. An officer told Blount on August 12, 2010, about the misinterpretation of policy and allowed Blount to exchange books and retrieve his Bible and Qur'an.

**Claim 2: Ramadan Medication Schedule**

Blount asserts that his sincere Muslim religious beliefs require him not to consume any food or drink during daylight hours for the month of Ramadan. In August 2010, prison officials approved Blount to participate in the Ramadan fast at Red Onion. On August 11, 2010, the first day of Ramadan, a nurse came to Blount's cell at the regular pill pass time, during daylight hours, to offer him his prescription medication for Gastroesophageal Reflux Disease ("GERD"). Blount filed an inmate complaint form, asking to have the medication schedule changed to non-daylight hours; he also sent Nurse Phipps documentation indicating that Muslim beliefs prohibit consumption of anything by mouth during the daylight hours of Ramadan. Blount indicates that for several years before 2010, Red Onion officials had altered the pill pass schedule to provide Ramadan participants with their medications during non-fasting hours.

Phipps responded to Blount's complaint, stating: "The Muslim [Chaplain] Services of Virginia advised the Department of Corrections that during Ramadan time that those participating would not break their fast by taking their medication with a small amount of water. Therefore, based on this information no time change in pill pass was necessary." (ECF No. 1,

---

[3] See OP 802.1(VII)(I)(1) (Owens Affid. Encl. B) (ECF No. 22-3.)

Ex. 4B). When Blount pursued a grievance on the issue, AWO Rowlette upheld Phipps' response.

For the entire Ramadan 2010 fast, Blount allegedly violated his religious beliefs every day by taking his prescribed GERD medication during daylight hours. Muslim Chaplain Services of Virginia later stated that none of its personnel had told anyone that taking medication during Ramadan fasting hours did not break the fast. During Ramadan 2011 and 2012, Red Onion officials changed the pill pass schedule so that nurses distributed medication to Ramadan participants before sunrise or after sunset.

## II

### A. SUMMARY JUDGMENT STANDARD

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact sufficient to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

### B. DAMAGES UNDER RLUIPA

Defendants are entitled to summary judgment as to Blount's claims under RLUIPA. This statute does not authorize a private cause of action for money damages against state prison personnel for actions taken in their official or individual capacities, because the statute does not waive the state's sovereign immunity under the Eleventh Amendment. Sossamon v. Texas,

__U.S.__, 131 S. Ct. 1651, 1660 (April 20, 2011) (official capacity); Madison v. Virginia, 474 F.3d 118, 133 (4th Cir. 2006) (same); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009) (individual capacity). Because Blount seeks only monetary damages in this action, defendants are immune to his claims under RLUIPA.[4]

Eleventh Amendment immunity does not bar Blount's First Amendment claims for damages under § 1983 against the defendants in their individual capacities, however. Lovelace v. Lee, 472 F.3d 174, 193-94 (4th Cir. 2006). The court separately addresses these claims.

## C. FIRST AMENDMENT FREE EXERCISE

The First Amendment protects an inmate's right to the free exercise of sincerely held, religious beliefs. U.S. Const. amend. I; Cruz v. Beto, 405 U.S. 319, 322 (1977). It is well established, however, that "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." Bell v. Wolfish, 441 U.S. 520, 545 (1979). Even a prison policy that substantially burdens an inmate's ability to practice his religious beliefs nevertheless withstands a First Amendment challenge when it is rationally related to furtherance of a legitimate governmental or penal interest. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 89-91 (1987).

To state a § 1983 claim that prison officials violated his First Amendment right to free exercise of religion, Blount must prove that he held a sincere religious belief, as opposed to a secular preference, and that the official action or regulation substantially burdened his exercise of

---

[4] The Rendelman and Sossamon decisions addressed only claims for damages against a state or state officials under the Spending Clause axis of RLUIPA. See 42 U.S.C. § 2000cc-1(b)(1). Blount fails to allege any facts suggesting that his claims against the defendants could qualify as actionable claims under the Commerce Clause section of RLUIPA. See 42 U.S.C. § 2000cc-1(b)(2). In any event, a survey of the caselaw establishes no basis on which a prisoner could advance a viable cause of action under the Commerce Clause element of RLUIPA. Therefore, the court is convinced that defendants are entitled to immunity as to the claims stated by Blount under RLUIPA.

that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). The Supreme Court defines a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," Thomas v. Review Bd. Of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of [his] religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other hand." Sherbert v. Verner, 374 U.S. 398, 404 (1963). Blount must also prove that the defendants knowingly violated his constitutional rights; inadvertent or negligent interference with an inmate's religious practice does not rise to constitutional proportions. See Lovelace, 472 F.3d at 194; Shaheed v. Winston, 885 F. Supp. 861, 868 (E.D. Va. 1995).

The final hurdle Blount must overcome is to prove that the official action was not rationally related to any legitimate governmental interest.[5] The court must consider four factors: (a) whether a "valid, rational connection" exists between the challenged regulation and a legitimate and neutral governmental objective; (b) whether alternative means of exercising the asserted constitutional right remain open to plaintiff; (c) whether accommodating the asserted right will have an adverse impact on staff, inmates, and prison resources; and (d) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns." Turner, 482 U.S. at 89-92.

---

[5] "[T]he burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams v. Morton, 343 F.3d 212, 217 3d Cir. 2003) (citing Overton v. Bazzetta, 539 U.S. 126, 132 (2003)).

6

## D. QUALIFIED IMMUNITY

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 206 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). Qualified immunity involves a two-step inquiry: (a) whether the plaintiff offers "specific, nonconclusory factual allegations" stating a claim that defendants' conduct violated a constitutional or statutory right, Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (emphasis added); and if so, (b) whether that right was clearly established. Saucier, 533 U.S. at 206.

Under the first facet of the Saucier analysis, the court inquires whether the complaint and attachments allege "enough facts to state a [constitutional] claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). The court must construe the factual assertions in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotations omitted). Under the second prong of the qualified immunity analysis, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at 202. Qualified immunity protects government officials from liability for "bad guesses in gray areas" and ensures that they are liable only "for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). "The unlawfulness must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990).

7

## E. DISCUSSION

**Claim 1: Religious Books**

Blount's allegations, taken in the light most favorable to him, fail to state a First Amendment claim as required under the first facet of the Saucier qualified immunity analysis. 533 U.S. at 202. Specifically, Blount does not forecast facts on which he could prove that Owens and Counts intentionally placed a substantial burden on Blount's free exercise rights.[6]

First, by possessing more books in his cell than prison policy allowed, Blount himself caused the deprivation of his religious books. If Blount had abided by prison regulations, his Bible and Qur'an would not have been removed in the first place. Thus, Blount's own disregard for prison policy, rather than any intentional act by the defendants, created the situation of which he now complains.

Second, Owens' written responses to Blount's inquiries about the confiscated volumes do not support a finding that Owens intentionally omitted these books from the weekly book exchange process between June 16 and July 12, 2010. Both times Blount asked about return of the books, on June 16 and July 12, 2010, Owens assured him the exchange could be arranged. Owens' apparently negligent failure to follow through on his stated intention to allow the exchange earlier is not a sufficient basis for a constitutional claim of intentional interference with Blount's religious practice. Lovelace, 472 F.3d at 194.

Third, after meeting with Blount on July 14, 2010, officers in defendants' position reasonably could have believed that continued deprivation of the books was not substantially burdening Blount's religious exercise, despite his claims to the contrary. That day, Owens and Deel told Blount that, according to their interpretation of the property policy, Blount's pending

---

[6] Blount challenges only the application of the book exchange policy in this instance, seeking monetary damages for the alleged, one-time violation of his rights. He does not challenge the policy itself or seek injunctive relief.

8

grievance was the only roadblock keeping him from immediately retrieving his religious books. Instead of withdrawing the grievance (a complaint about Owens' delay in returning his books), Blount chose to pursue the grievance against Owens, rather than taking whatever action would ensure that he received his religious books as soon as possible. At this point, it was Blount's conscious decision, and not any intentional act by the officers to interfere with Blount's beliefs, that prolonged the deprivation of his religious books.[7]

For these reasons, the court is satisfied that Blount's allegations fail to state a plausible claim that Owens and Counts, at any time, intentionally placed a substantial burden on Blount's exercise of his religious beliefs. Lovelace, 472 F.3d at 194. Because Blount thus fails to state a First Amendment claim regarding this incident, the defendants are entitled to summary judgment. Saucier, 533 U.S. at 206.

**Claim 2: Ramadan Medication Schedule**

The parties agree that Muslim religious authorities have now clarified that Muslim inmates, with sincere religious beliefs requiring them to fast during Ramadan, also believe that taking medication by mouth with any amount of water during fasting hours interferes with the

---

[7] Moreover, Blount states no facts showing that the defendant officers intentionally misapplied the policy for any reason. Their negligent misunderstanding of the nature of his grievance or of the policy itself is not sufficient to state any First Amendment claim. Lovelace, 472 F.3d at 194.

fasting ritual.[8] It is clear from the record that officials changed the pill pass schedule at Red Onion to accommodate this Muslim belief during Ramadan 2011 and Ramadan 2012. Whether or not this accommodation is required by the First Amendment or RLUIPA remains an inquiry for another day in some other case. The only issue the court addresses here is whether Blount can recover monetary damages against Defendants Phipps and Rowlett for a violation of his First Amendment rights. The answer is no.

After thoughtful review of the record, the court finds that defendants are entitled to summary judgment on Claim 2 on the ground of qualified immunity. Blount's allegations fail under the first facet of Saucier. Id. Even taken as true, his factual assertions do not state a plausible claim that defendants intentionally placed a substantial burden on his religious practice, see Lovelace, 472 F.3d at 194, or that the medication schedule they implemented violated the

---

[8] One of defendants' arguments is that Blount has no actionable claim under the First Amendment, because his past actions show he is not sincere in his beliefs concerning the Ramadan fast. This argument rests, in large part, on the resolution of two previous lawsuits filed in this court. See Abdul-Mateen v. Phipps, Case No. 7:11CV00051 and Carter v. Garman, Case No. 7:11cv00477. The plaintiffs in these cases were Red Onion inmates who sued Phipps and other VDOC officials, claiming that plaintiffs' constitutional rights to free exercise of their religious beliefs were violated by the lack of pill pass accommodation during Ramadan 2010. In the first of these cases, Abdul-Mateen v. Phipps, Case No. 7:11CV00051, the court denied Defendant Phipps' motion to dismiss and conducted a joint hearing in that case and Carter v. Garman, Case No. 7:11cv00477. Thereafter, the parties settled both cases. As part of the settlement agreement, Red Onion officials hosted a 30-day Ramadan fast accommodation held prior to, and in addition to, the regularly scheduled Ramadan for 2012. The purpose of this extra Ramadan fast was to allow any offender who believed that the taking of medicine during daylight hours had broken his 2010 fast to fulfill his religious obligation to observe a 30-day unbroken fast.

Blount did not participate in the extra Ramadan fast in 2012. Defendants assert that his failure to do so demonstrates his lack of religious sincerity with regard to this Muslim practice. See, e.g., McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987) (It is appropriate for prison authorities to deny a special diet if an inmate is not sincere in his religious beliefs."). Blount responds to this argument by stating that in his personal religious beliefs, he follows the teaching of certain Muslim clerics who state that Ramadan may only be celebrated during the period designated annually for this ritual. Taking these allegations as true, as required on summary judgment, the court cannot find that Blount's failure to participate in the extra Ramadan service in 2012 is conclusive evidence that he had no sincere religious belief regarding the practice of Ramadan during that ritual in 2010. See, e.g., Review Bd. of Indiana Employment Serv. Div., 450 U.S. 707, 716 (1981) (finding that federal courts are not to sit as arbiters of religious orthodoxy).

First Amendment under the balance of factors outlined in O'Lone and Turner. 482 U.S. at 349; 482 U.S. at 89-91 (see discussion, supra, at II(C)).

Blount does not state facts on which a reasonable factfinder could conclude that Phipps or Rowlette had any independent authority under VDOC policy to determine appropriate accommodation of inmates' religious practices. Blount's submissions, as well as VDOC policies available online as public record,[9] indicate that VDOC administrative officials, rather than employees at particular prison facilities, seek out information from religious experts about various religious practices, determine reasonable accommodations VDOC facilities are obligated to make, and inform prison staff how to proceed.[10] Based on the information Phipps had received from a VDOC administrative staffer who had researched Muslim religious practices, Phipps and Rowlette believed that the pill pass schedule adjustment that Red Onion had made in the past for Ramadan inmates was not necessary after all to accommodate Muslim inmates'

---

[9] In resolving whether plaintiff's allegations state a prima facie claim, the Court is not precluded in its consideration of the Complaint from taking notice of items in the public record. Philips v. Pitt County Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004) (noting that it was proper during Rule 12(b)(6) review to consider "publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services.") (omitting citations).

[10] See, e.g., OP 841.3(III) (defining "Faith Review Committee" as the "panel of representative [VDOC] staff who serve in an advisory and decision making capacity regarding religious accommodation as it relates to, and impacts on security and penological interests of the [VDOC]").

practice.[11] Thus, Blount fails to state a plausible claim that Phipps or Rowlette, by maintaining Red Onion's normal pill pass schedule during Ramadan 2010 in compliance with this VDOC policy directive, knowingly violated Blount's First Amendment rights.[12] Lovelace, 472 F.3d at 194.

Even if Blount could show that defendants or some other VDOC official decided not to require changing the pill pass hours in 2010, knowing that this policy placed a substantial burden on inmates' religious rights, Blount has not alleged evidence to prove a constitutional violation under the balance of factors required under the Turner analysis. 482 U.S. at 89-91. It is self-evident that Red Onion's 2010 Ramadan medication policy was rationally related to legitimate and neutral governmental interests in controlling the costs of prison administration. Maintaining the institution's regular pill pass schedule during Ramadan, for fasting and nonfasting inmates alike, relieved the facility of extra scheduling and staffing costs associated with temporarily implementing an alternate pill pass agenda only for Ramadan participants. Id. at 89-90 (concerning adverse impact of requested accommodation on prison resources and connection

---

[11] The affidavit by former Red Onion Warden Tracy Ray verifies that officials at individual prison facilities do not determine appropriate religious accommodations. Ray states that Red Onion officials were

> advised, via email, by the [VDOC] Office of Health Services in 2009 that [they] were not required to alter pill pass hours during Ramadan. . . .[and] that during Ramadan offenders could accept medications with a small amount of water during daylight hours and it would not break their fast per Muslim Chaplain Services of Virginia's presentation on Responding to Religious Diversity in Virginia Prisons. Due to this information we did not alter the pill pass hours during Ramadan 2010. Red Onion staff did not make the decision to administer medications during daylight hours. We complied with advice given to this institution from the Office of Health Services.

(Ray Affid., at ¶¶4-6) (ECF No. 22-1.)

[12] Moreover, Rowlette's involvement in the Ramadan medication matter was limited to affirming the denial of Blount's grievance. Generally, prison officials are absolutely immune from liability stemming from their participation in the inmate grievance process. Burst v. Mitchell, 589 F. Supp. 186, 192 (E.D. Va. 1984).

between regulation and legitimate, neutral objectives). Moreover, VDOC officials undertook substantial effort to accommodate Muslim inmates' beliefs during Ramadan 2010, another consideration under Turner. Id. at 90 (concerning other means for inmate to exercise religious beliefs). Blount received his meals outside fasting hours, in keeping with his beliefs, and could also study his religious books in his cell. Finally, under the fourth Turner factor, Blount fails to assert any less burdensome alternative available to prison officials by which to accommodate Blount's religious fasting beliefs and his medication needs without incurring substantial expenditure of prison resources. Id. (concerning absence of ready alternative accommodations).

For these reasons, Blount does not state facts showing that defendants' failure to change the pill pass schedule during Ramadan 2010 violated the First Amendment under Lovelace, Turner, and O'Lone. Therefore, under the first facet of the qualified immunity analysis in Saucier, 533 U.S. at 206, defendants are entitled to summary judgment on this claim.[13]

### III

For the stated reasons, the court concludes that defendants' motion for summary judgment must be granted. An appropriate order will enter this day granting defendants' motion for summary judgment.

---

[13] Blount's case is distinguishable from Abdul-Mateen, Case No. 7:11CV00051, in fact and law, although both cases challenged the same prison policy implemented during Ramadan 2010. Plaintiff Khalif Abdul-Mateen raised claims under the First Amendment and RLUIPA, seeking monetary and injunctive relief. Phipps' motion to dismiss in that case argued only that Abdul-Mateen had not alleged facts showing Phipps' personal involvement in the challenged decision not to alter the pill pass schedule. Abdul-Mateen had alleged that other nurses told him Phipps was the person to ask about the pill pass schedule. The court denied the motion to dismiss, finding that taking Abdul-Mateen's liberally construed allegations as true, he had alleged Phipps' personal involvement in the scheduling decision.

Blount makes no such allegation suggesting that Phipps had personal authority to change the pill pass schedule. Also, because Phipps' motion to dismiss in Abdul-Mateen's case focused only on her alleged lack of involvement in the scheduling decision, the court's analysis in that case did not reach the First Amendment analysis under Turner, as it is required to do in Blount's case. Finally, Phipps was not entitled to dismissal of Abdul-Mateen's case on the ground of qualified immunity, given plaintiff's request for injunctive relief. As noted, Blount has not requested and can show no entitlement to injunctive relief.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 6th day of March, 2013.

/s/ John Conrad
Chief United States District Judge